UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re                                Chapter    11

        BXP 1 LLC,                    Case No.   10-15608

                Debtor

---------------------------------------------------------x

## DISCLOSURE STATEMENT

THIS PROPOSED DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST OF BXP 1 LLC. ("DEBTOR"). IT IS SUBJECT TO FINAL APPROVAL AT THE CONFIRMATION AND DISCLOSURE STATEMENT HEARING DESCRIBED BELOW. IF THERE IS AN OBJECTION TO APPROVAL OF THE DISCLOSURE STATEMENT, IT WILL BE CONSIDERED AT THE CONFIRMATION HEARING.

ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY. ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION ANNEXED TO THE DISCLOSURE STATEMENT AS EXHIBIT A.

EXCEPT FOR THE SECURED MORTGAGEE WHO HAS AGREED TO THE PLAN, THE PLAN PROVIDES FOR PAYMENT IN FULL IN CASH WITH INTEREST TO ALL CREDITORS WITH ALLOWED CLAIMS. ACCORDINGLY, ALL CREDITOR CLASSES ARE UNIMPAIRED AND ARE DEEMED TO HAVE ACCEPTED THE PLAN.

THE DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544
ATTORNEYS FOR THE DEBTOR

# INTRODUCTION

1. The Debtor submits this Disclosure Statement ("Disclosure Statement") in connection with its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit "A". All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement. All capitalized terms used but not defined herein shall have the meaning set forth in the Plan. Any objections to final approval of this disclosure statement must be made at the same time and manner as objections to confirmation of the Plan.

2. This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan in an effort to explain the terms and implications of the Plan. Every effort has been made to fully explain the various aspects of the Plan as it affects all Creditors. To the extent a Creditor has any questions, the Debtor urges you to contact its counsel and every effort will be made to assist you. THE DEBTOR WILL NOT BE SOLICITING VOTES BECAUSE ALL CREDITORS ARE DEEMED TO HAVE ACCEPTED THE PLAN. Creditors should read this Disclosure Statement in its entirety.

3. EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH

RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

4. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR. THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE INFORMATION HAS NOT BEEN SUBJECT TO AUDIT.

## GENERAL INFORMATION REGARDING THE DEBTOR

5. On October 27, 2010, the Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code").

6. The Debtor owns six apartment buildings in the Bronx, New York: 1268 Stratford Ave., 1350 University Ave., 1585 East 172nd St.,1589-91 East 172nd St., 1636 University Ave., and 1640 University Ave. (collectively, the "Properties"). Although the Debtor has no current appraisals, the Debtor believes that it has equity in each of the Properties.

7.     Each property appears to be encumbered by a mortgage in favor of the various affiliate lenders, as set forth below (collectively the "Lender") as well as statutory liens in favor of the City of New York in the amounts set forth below:

|  | NYC Liens | 1st Mortgage |
|---|---|---|
| 1268 Statford | $193,157.89 | $4,894,068.16 |
| 1350-52 University | $116,600.54 | $2,997,775.98 |
| 1585 East 172nd St. | $163,318.36 | $3,469,461.38 |
| 1589-91 East 172nd St | $195,438.74 | $4,458,268.44 |
| 1636-40 University | $452,972.53 | $3,955,638.39 |

LENDER                                      PROPERTY

1268 Stratford Debt LLC              1268 Stratford Avenue

1350 Universe Debt LLC              1350-52 University Avenue

1585 East 172nd Debt LLC           1585 East 172nd Street

1636-1640 Universe Debt LLC       1636-1640 University Avenue

1591 172nd Debt LLC                  1589-1591 172nd Street

8.     Each property is subject to a foreclosure proceeding pending in the Supreme Court, Bronx County. A receiver was appointed for 1636-1640 University Avenue. With respect to the other Properties the Debtor and the Lender subsequently stipulated to the Debtor's retention of the receiver's proposed managing agent to manage all of the Debtor's Properties in lieu of the receiver taking possession. The Receiver appointed in connection with

-4-

1636-1640 University Avenue appointed the same managing agent as stipulated between Debtor and Lender and today manages all of the Properties.

9.     The Debtor's general unsecured creditors have claims totaling approximately $151,686.  Approximately $83,500 of that amount represents insider debt.

10.     The Debtor's financial problems are primarily the result of mismanagement by the Debtor's former managing agent, together with the economic downturn which caused a number of tenants to default and/or vacate their apartments, high oil prices and tax increases.

11.     Having made progress towards stabilizing its finances, the Debtor's goal in this Chapter 11 case was to restructure, refinance, reinstate the existing loans, or to liquidate the properties in a manner that will facilitate a fair and realistic return for all interested parties.

12.     After attempting to restructure, refinance or reinstate the existing loans, the Debtor determined that a negotiated settlement with the Lender involving a liquidation of the Properties was the best option.  Under the Plan, the Properties will be sold, subject to the outstanding mortgages to various entities controlled by certain of the Lender's insiders (the "Lender Affiliates") or their designees to which the Lender Affiliates may assign its purchase rights.  Although the Lender's Affiliate have some commonality of ownership, the member of the Lender's Affiliate and Lender are not all the same parties.   In connection therewith, the Lender

agreed to adjust the amount due to the Lender to enable payment in full in cash plus interest to all creditors (except the Lender's Affiliates, which will assume the Mortgages) as well as a distribution to the Debtor's Equity Holder. Specifically, the Plan provides that there shall be a carve out from the sale proceeds to pay creditors under the Plan. The Carve out amuont is $554,472 to pay administration claims, priority claims, general unsecured claims and the Debtor's Equity Holder. The Lender has agreed further to advance such funds by depositing them in escrow with the undersigned's Debtor's counsel before the Confirmation Hearing.

13.     The Debtor participated in extensive marketing particularly in the pre-petition period, and was unable to find a buyer at a purchase price sufficient to generate such a result. The Lender Affiliates are as follows:

| Lender Affiliate | Property |
|---|---|
| 1268 Stratford Holdings LLC | 1268 Stratford Avenue |
| 1350 Universe Holdings LLC | 1350-52 University Avenue |
| 1585 East 172nd Holdings LLC | 1585 East 172nd Street |
| 1640 Universe Holdings LLC | 1636-1640 University Ave |
| 1591 172nd Holdings LLC | 1589-1591 172nd Street |

14.     In summary, the Plan is predicated upon a private sale of the Debtor's Properties under 11 U.S.C. §363(b) and (f) and 11 U.S.C.§1123(a)(5). The Lender Affiliates or their designee(s) shall assume the Lender's mortgages. The balance of the purchase price shall

be paid in cash on the Payment Date. Confirmation of the Plan will precede the actual transfer of the Properties. The purchase price per property is as follows:

| Property | Purchase Price |
|---|---|
| 1268 Statford | $5,191,879.56 |
| 1350-52 University | $3,205,176.52 |
| 1585 East 172nd St. | $3,728,569.84 |
| 1589-91 East 172nd St | $4,776,865.88 |
| 1636-40 University | $4,519,135.06 |

15.    In the absence of the Lender's agreement, it is extremely unlikely that there would be a material distribution to Creditors or the Equity Holder, let alone payment in full in cash with interest to all creditors herein plus a substantial distribution to equity.

## DEBTOR'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

Class 1: Secured New York City Claims

16.    Classification - Class 1 consists of the Secured Claims of the City of New York for unpaid real estate taxes, including recorded liens for unpaid real estate tax, water and sewer charges and other New York City liens on the Debtor's Properties as of the Effective Date.. To the best of the Debtor's knowledge, the Class 1 claims have been paid by the Lender through protective advances during this case.

17. Treatment -- Class 1 Claims shall be paid in full plus interest at the applicable statutory rate on the Effective Date from the proceeds of the sale of the Properties.

18. Voting -- The Holder of the Class 1 Claim is unimpaired and is deemed to have accepted the Plan.

Class 2: Lender's Mortgage Claim

19. Classification - Class 2 consists of the first mortgages on the Properties held by the Lender.

20. Treatment - The Lender shall be entitled to all of the rights, benefits and amounts due, arising from the sale of the Properties. In connection therewith, the Lender Affiliates or their designees shall be the purchaser(s). The purchasers shall be permitted to assume the existing mortgages. The conveyance of the property to the Lender's Affiliate or its nominee shall not constitute a merger between the mortgage and the fee ownership. The Lender shall receive payment of the cash portion of the sale proceeds on the Effective Date, less the amounts necessary to pay Class 1 Claims. Before the Confirmation Hearing, the Lender shall transfer $554,472 to the undersigned counsel for the Debtor to be held in escrow for payment of Administration Claims and Class 4 through 6 Claims herein, and for United States Trustee fees for the period for the third quarter of 2011 through the date this case is closed, which amount is

estimated to be approximately $7,000. In the event that United States Trustee fees exceed $7,000, the Lender shall be responsible for any additional amounts due.

21.     Voting - The Holder of the Class 2 Claims is impaired, and has agreed to be deemed to have accepted the plan.

### Class 3: Rosenberg Judgment Claim

22.     Classification - Class 3 consists of the Secured Claim of Rosenberg & Pittinsky LLP, which holds a claim judgment in the amount of $81,686. Class 3 has a lien on certain of the Debtor's funds in the estimated amount of $49,000.

23.     Treatment – Class 3 shall be paid the approximate amount of $49,000 in the Debtor's bank account known as private client group 529 at Signature Bank, 261 Madison Avenue, New York, New York, 10016 as soon as practicable after the Confirmation Order becomes a Final Order. The remainder of the amount due in the approximate amount of $32,686 shall be treated as a Class 5 Claim.

24.     Voting - The Holder of the Class 3 Claim is unimpaired and is deemed to have accepted the Plan.

### Class 4: Priority Claims

25.     Classification - Class 4 consists of Allowed Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7),and (8) of the Bankruptcy Code. The City of New York filed several claims on behalf of the Department of Housing Preservation and Development and the Environmental Control Board. All such claims were resolved and paid by the Lender as protective advances.

26.     Treatment - Holders of Allowed Class 4 Claims shall be paid in full in Cash plus interest at the applicable statutory rate on the Payment Date.

27.     Voting - Class 4 is unimpaired and is deemed to have accepted the Plan.

Class 5: Unsecured Claims

28.     Classification - Class 5 consists of Allowed Unsecured Claims. Based upon the Debtor's schedules and the Clerk of Court's claims docket, Class 5 Claims total approximately $151,686

29.     Treatment - Class 5 Claimants shall be paid in full plus interest at the Legal Rate from the Petition Date on the Payment Date.

30.     Voting - Class 5 is unimpaired and is deemed to have accepted the Plan.

Class 6: Equity Holders

31.     Classification - Class 6 consists of DDF Bronx Portfolio LLC, the Debtor's president and sole shareholder.

32.     Treatment - The Class 6 Equity Holder shall be entitled to such surplus as may be available on the Payment Date after payment of Administration Claims, Class 3, Class 4, and Class 5 Claims under the Plan, plus such other amounts that may be due by the Debtor under the sale of the Properties.

33.     Voting - The Holder of Class 6 Equity Interests is impaired but has agreed to accept the Plan.

## ADMINISTRATIVE EXPENSES

34.     Debtor's Professional Fees shall be paid in full on the Payment Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction. Any fees or charges assessed

against the Debtor's Estate under Chapter 123, Title 28, United States Code shall be paid in full as they come due or from either the funds collected by the Receiver or the sale proceeds. To the extent that any unpaid Allowed Administrative Expenses exist arising from the operation of the Properties, payment of those expenses shall be the Lender's responsibility.

35.     Backenroth Frankel & Krinksy, LLP, as counsel for the Debtor, received a $10,000 retainer before the filing of the Debtor's petition. Debtor's counsel estimates that it will have incurred additional outstanding fees of approximately $30,000 upon confirmation of the Plan.

## MEANS FOR IMPLEMENTATION OF THE PLAN

36.     Sale. The Properties shall be sold, subject to the outstanding mortgages to various entities controlled by certain of the Lender's insiders (the "Lender Affiliates") or their designees to which the Lender Affiliates may assign its purchase rights. Although the Lender Affiliates have some commonality of ownership, the member of the Lender Affiliates and Lender are not the same parties. The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, including, without limitation, effectuating a closing on the sale of the Properties based upon approval of this Plan and entry of the Confirmation Order. In connection therewith, the Debtor shall transfer to the Lender Affiliates a bargain and sale deed with covenants, an assignment and assumption of leases, security deposits (to the extent they exist), an assignment of rental arrears, and a bill of sale. The

sale shall be free and clear of any liens claims and encumbrances, with such liens, claims and encumbrances, if any, to attach to the cash proceeds of sale, except the mortgages which will be assumed by the purchaser of the Properties. The sale shall close on the Effective Date. Before the Confirmation Hearing, the Lender shall escrow $554,472 with the undersigned Debtor's counsel to be disbursed to Administration Claims, Class 4 and 5 Creditors and the Office of the United States Trustee under the Plan on the Payment Date, or as soon thereafter as such amounts come due. Class 1 and 2 Creditors shall be paid from the sale proceeds on the Effective Date. The Class 3 Creditors shall be entitled to Payment from the funds subject to its lien as soon as practicable after the Confirmation Order becomes a Final Order. The purchaser(s) of the Properties shall be afforded the protections of Section 363(m) of the United States Bankruptcy Code. The conveyance of the property to the Lender's Affiliate or its nominee shall not constitute a merger between the mortgage and the fee ownership.

37. The total purchase price for the sale of the Debtor's Properties shall be $19,775,211, broken down per property as follows:

| Property | Purchase Price |
| --- | --- |
| 1268 Statford | $5,191,879.56 |
| 1350-52 University | $3,205,176.52 |
| 1585 East 172nd St. | $3,728,569.84 |
| 1589-91 East 172nd St | $4,776,865.88 |
| 1636-40 University | $4,519,135.06 |

38.     The Lender Affiliates or their designee(s) shall assume the Lender's mortgages. The balance of the purchase price shall be paid in cash on the Payment Date. The $554,472 carve out for plan payments shall be transferred to the Debtor on the Payment Date, Confirmation of the Plan will precede the actual transfer of the Properties.

39.     Revesting of Assets. Except as otherwise provided herein concerning the Sale of Properties and distribution of the cash proceeds pursuant to the terms hereof, any other residual assets shall vest in the Debtor free and clear of all Liens, Claims and encumbrances if and when all required distributions made hereunder are paid in full. Any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all Properties of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

40.     Execution of Documents. The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

41.     Filing of Documents. Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and

consummate the transaction contemplated by the Plan, including, but not limited to any and all

notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly

preserved by the Plan, and the Confirmation Order.


42.    11 U.S.C. 1146.  Under the Plan, pursuant to Bankruptcy Code § 1146(a)

the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of

any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of

any lease or sublease or the making or delivery of any deed or other instrument of transfer under,

pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any

deeds, bills of sale or assignments executed in connection with the purchase of the Properties by

the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or

sale of any real or personal property of the Debtor pursuant to, in implementation of, or as

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness

by such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan. Consistent with the foregoing, and the

Supreme Court interpretation of the Bankruptcy Code § 1146(a) exemption, each recorder of

deeds or similar official for any county, city or governmental unit in which any instrument

hereunder is to be recorded, any instrument of transfer of the title to the Properties, pursuant to

the Confirmation Order, shall accept such instrument, without requiring the payment of any filing

fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage tax, intangible tax or

similar tax, including without limitation New York City Real Property Transfer Tax and New

York State Documentary Tax.  The Confirmation Order shall expressly reference and incorporate

this provision of the Plan so it is absolutely clear that the Debtor properly qualifies for the Section 1146(a) exemption.

43.     Release of Co-Debtors.  The guarantors of the Lender's claims shall be deemed released by the Lender in all respects on the Effective Date.

## EXECUTORY CONTRACTS

44.     All tenant leases shall be deemed assumed and assigned to the purchaser of the Properties.  All other executory contracts not rejected before the Effective Date, including, shall be deemed assumed on the Effective Date.

## LITIGATION ANALYSIS

45.     No litigation is pending or contemplated herein.

## OBJECTIONS TO CLAIMS

46.     The Debtor does not anticipate any objections to claims, but in an abundance of caution, the Debtor reserves the right to object or contest the allowance of any Claims, except the claims of the Lender, provided an objection is filed prior to Confirmation and reserves are established in the event the objection is still pending on the Effective Date.

## MANAGEMENT OF THE DEBTOR

47.     The Debtor is managed by Susumu Endo, as managing member of DDF Bronx Portfolio LLC, the Debtor's managing member.  Post-confirmation the Debtor will remain unchanged, but management of the Properties will be determined by the Purchaser of the Properties.

## TAX CONSEQUENCES

48.     The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent a Creditor may have taken bad debt deduction for amounts owed by the Debtor, Plan distributions may constitute taxable income.

THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

49.    The Debtor may transfer the Properties without the imposition of New York City Real Property Transfer Tax and New York State Documentary Tax, and pursuant to Section 1146(a) of the Bankruptcy Code. All City of New York filing officers are authorized to record the documents evidencing said transfer immediately upon presentation thereof without the payment of such amounts.

## FINANCIAL ANALYSIS AND LIQUIDATION ANALYSIS

50.    Creditors will be paid in full in cash with interest under the Plan, except that the Lender has agreed to be impaired as set forth in the Plan.

51.    The Debtor believes that the $19,775,211 million purchase price is the value of the Properties because the purchase price was entered into after many months of marketing. A Chapter 7 liquidation sale of the Properties would be unlikely to generate sufficient proceeds to pay all creditors in full with interest. Indeed, in a Chapter 7 sale context, the claims would be dramatically larger than in a Chapter 11 plan context because the Debtor's estate would not enjoy the benefit of the Debtor's agreement by the Lender to reduce its claim, and in addition, in a Chapter 7 sale context, the estate would be burdened by additional Chapter 7 administration costs including trustee compensation, trustee's attorney's compensation, trustee's accountant compensation, broker's commissions, and transfer tax obligations. Accordingly, the Debtor believes that the only means by which all creditors are assured payment in full in cash with interest, is by confirmation of the Debtor's Plan.

52.     A balance sheet and liquidation analysis are annexed hereto as Exhibit B.

## VOTING PROCEDURES AND REQUIREMENTS

53.     The Plan leaves all creditors, other than the Lender, unimpaired; however, the Lender has agreed to accept the Plan subject to the terms and conditions set forth on Exhibit A to the Plan.  Therefore, since all creditors have either accepted the Plan or are deemed to have accepted the Plan, votes will not be solicited from creditors.

## CONFIRMATION OF THE PLAN

54.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

55.     The Confirmation Hearing and hearing on approval of the Disclosure Statement has been scheduled for August 10, 2011, at 10:00 a.m., in Judge Lane's Courtroom, United States Bankruptcy Court, One Bowling Green, New York, New York.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the

Bankruptcy Court with proof of service and served upon the following on or before August 3, 2011:

Backenroth Frankel & Krinsky, LLP
489 Fifth Avenue
New York, New York 10017
Mark A. Frankel, Esq.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

     56.    At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan. The applicable requirements are as follows: The Plan complies with the applicable provisions of the Bankruptcy Code; The Debtor has complied with the applicable provisions of the Bankruptcy Code; The Plan has been proposed in good faith and not by any means forbidden by law; Any payment made or promised by the Debtor or by a person issuing securities or acquiring Subject Premises under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable; The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent

with the interests of Creditors and equity security holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider; With respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest Subject Premises of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code; Each class of Claims or interests has either accepted the Plan or is not impaired under the Plan; Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date; If any class of Claims is impaired, at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class; and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

57.     The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

## CRAMDOWN

58.     All impaired creditors have agreed to accept the Plan, and therefore the cramdown provisions of the Code do not apply to this case.

59.     The Debtor submits that the Plan is in the best interests of creditors.

Dated: New York, New York
June 23, 2011

                              BXP 1 LLC, BY DDF BRONX PORTFOLIO LLC
                              AS MANAGING MEMBER,

                    By:     s/Susumu Endo, Managing Member

                              BACKENROTH FRANKEL & KRINSKY, LLP
                              Attorneys for Debtor

                    By:     s/Mark A. Frankel
                              489 Fifth Avenue
                              New York, New York 10017
                              (212) 593-1100